UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORTEZ BENNETT #330900, | ) ) ) |
| Petitioner, | ) ) No. 3:23-cv-01227 |
| v. | ) ) ) |
| WARDEN JOHNNY FRITZ, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

Cortez Bennett, an inmate of the West Tennessee State Penitentiary in Henning, Tennessee, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1). He paid the full filing fee. (Doc. No. 5).

Petitioner is currently serving a sentence of life plus fifty years' imprisonment for convictions for one count of first-degree murder, one count of attempted first-degree murder, and two counts of especially aggravated robbery. (Doc. No. 1 at 1).

### I. PROCEDURAL HISTORY

On March 1, 2021, Petitioner and his co-defendant were convicted by a Davidson County Criminal Court jury of first-degree premeditated murder for the killing of the victim, Ms. Tonya Tyler, one count of first-degree felony murder for the killing of Ms. Tyler, one count of especially aggravated robbery, one count of attempted first-degree murder for the attempted killing of Mr. Wesley Tyler, Sr., and one count of especially aggravated robbery of Mr. Tyler. State v. Mays, No. M2001-02151-CCA-R3-CD, 2002 WL 31385939, at *2 (Tenn. Crim. App. Oct. 22, 2002), perm. app. denied (Tenn. 2003); (Doc. No. 10-1 at PageID 109, 122-25). On the same day, the trial court imposed the mandatory life sentence on the conviction for first-degree premeditated murder

1

and on the conviction for first-degree felony murder. (Id. at PageID 109). Following a sentencing hearing, the trial court imposed a sentence of twenty-five years for especially aggravated robbery and a twenty-five-year sentence for attempted first-degree murder. (Id. at PageID 122-25). The trial court ordered the two twenty-five-year sentences to run concurrently to each other but consecutive to the two life imprisonment sentences, resulting in a total effective sentence of life imprisonment plus fifty years. Mays, 2002 WL 31385939, at *2.

In a consolidated direct appeal, Petitioner sought review of (1) the trial court's denial of his motion to suppress the photographic line-up, (2) the sufficiency of evidence to support his convictions for first-degree murder, attempted first-degree murder, and two counts of especially aggravated robbery, and (3) his life sentence plus fifty years. Id. at *3-*6. On October 22, 2002, the Tennessee Court of Criminal Appeals affirmed. Id. at *9. Petitioner sought further discretionary review in the Tennessee Supreme Court, which was subsequently denied on February 24, 2003. (Doc. No. 10-19). Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.

Petitioner then filed a pro se petition for post-conviction relief in the Davidson County Criminal Court, which was later amended by counsel. (Doc. No. 11-1 at PageID 1360-76, 1379-85, 1388-89). Following an evidentiary hearing, the post-conviction court denied post-conviction relief. (Id. at PageID 1393-1400). Petitioner appealed. Bennett v. State, No. M2004-02640-CCA-R3-PC, 2005 WL 2546929 (Tenn. Crim. App. Oct. 11, 2005) (no perm. app. filed). On appeal, Petitioner raised fifteen claims of ineffective assistance of counsel. Id. at *8-*9. The Tennessee Court of Criminal Appeals affirmed. Id. at *16. Petitioner did not seek discretionary review with the Tennessee Supreme Court.

Approximately eight years later, Petitioner filed a motion to reopen his post-conviction proceedings in the Davidson County Criminal Court, and the motion was summarily dismissed by the postconviction court. (Doc. Nos. 11-7, 11-8). Petitioner filed an untimely appeal of the summary dismissal to the Tennessee Court of Criminal Appeals. (Doc. No. 11-9). The Tennessee Court of Criminal Appeals found that, because Petitioner had failed to follow the only recognized avenue for pursuing an appeal of the trial court's denial of his motion to reopen, the court lacked jurisdiction to entertain the matter. (Id. at PageID 1613). The Tennessee Supreme Court denied Petitioner's request for discretionary review. (Doc. No. 11-12).

In March 2019, Petitioner filed a motion to correct an illegal sentence in Davidson County Criminal Court pursuant to Tennessee Rules of Criminal Procedure Rule 36.1. (Doc. No. 11-13 at PageID 1665-84). The court summarily denied the motion, and Petitioner appealed to the Tennessee Court of Criminal Appeals. State v. Bennett, No. M2019-01034-CCA-R3-CD, 2020 WL 2044740, at *1 (Tenn. Crim. App. Apr. 28, 2020) (no perm. app. filed). On April 28, 2020, the Tennessee Court of Criminal Appeals affirmed, holding that Petitioner's sentences are not illegal under the terms of Tenn. R. Crim. P. 36.1. Id. at *2. Petitioner did not seek discretionary review with the Tennessee Supreme Court.

In November 2021, Petitioner filed a petition for writ of state habeas corpus in Lake County Circuit Court, alleging that his sentence for first-degree murder directly contravened state law, that the indictment for first-degree attempted murder was void, and that his dual conviction for especially aggravated robbery of Mr. and Mrs. Tyler violated double jeopardy principles. Bennett v. Genovese, No. W2021-01507- CCA-R3-HC, 2022 WL 2733404, at *1 (Tenn. Crim. App. July 12, 2022), perm. app. denied (Tenn. 2022). The petition was summarily denied. Id. Petitioner appealed the summary denial to the Tennessee Court of Criminal Appeals. Id. On July 12, 2022,

3

the Tennessee Court of Criminal Appeals affirmed the trial court's summary denial, discerning no error. Id. Petitioner sought discretionary review in the Tennessee Supreme Court, which subsequently denied review. (Doc. No. 11-28).

On November 14, 2023,[1] Petitioner filed the instant a pro se petition for writ of habeas corpus under 28 U.S.C § 2254. (Doc. No. 1 at PageID 12).

## II. STANDARD FOR PRELIMINARY REVIEW OF SECTION 2254 CASES

Under Rule 4, Rules – Section 2254 Cases, the court is required to examine Section 2254 petitions to ascertain as a preliminary matter whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." If, on the face of the petition, it appears that the petitioner is not entitled to habeas corpus relief, then the "the judge must dismiss the petition . . . ." Id.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified, inter alia, at 28 U.S.C. §§ 2244, et seq.), prisoners have one year within which to file a petition for habeas corpus relief which runs from the latest of four (4) circumstances, one of which appears to be relevant here—"the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

The AEDPA's one-year limitations period is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2); see Ege v. Yukins, 485 F.3d 364, 371

---

[1] Under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in Richard v. Ray, 290 F.3d 810, 812 (6th Cir. 2002) and Scott v. Evans, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that Petitioner filed his petition on November 14, 2024, the date he signed the petition (Doc. No. 1 at at PageID 28), even though the Clerk of Court received and docketed the petition on November 20, 2023.

(6th Cir. 2007). However, any lapse of time before a state application is properly filed is counted against the one-year limitations period. See Bennett v. Artuz, 199 F.3d 116, 122 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000). When the state collateral proceeding that tolled the one-year limitations period concludes, the limitations period begins to run again at the point where it was tolled rather than beginning anew. See Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004) (citing McClendon v. Sherman, 329 F.3d 490, 494 (6th Cir. 2003)).

### III. RULE 4 PRELIMINARY REVIEW

The record before the Court shows that the date on which Petitioner's judgment became final by conclusion of direct review was February 24, 2003. (See Doc. No. 10-19). On February 25, 2003,[2] the 90-day period within which Petitioner could have filed a writ of certiorari with the United States Supreme Court began. During that ninety 90-day period, the AEDPA's one-year limitations period was tolled. See Clay v. United States, 537 U.S. 522, 532 (2003). The 90-day period ended on May 27, 2003.[3] The AEDPA one-year limitations period began running the next day, on May 28, 2003. Therefore, Petitioner had one year from May 28, 2003, to timely file his federal habeas petition.

On February 10, 2004 (applying the prison mailbox rule), Petitioner statutorily tolled the limitations period by properly filing a pro se state petition for post-conviction relief. (See Doc. No. 11-1). At this time, Petitioner's statute of limitations had been running for 259 days. The limitations period remained tolled during the post-conviction proceedings (which concluded following the expiration of the sixty days after October 11, 2005, when Petitioner could have, but

---

[2] Where, as here, the time period is stated in days or a longer unit of time, the Court excludes the day of the event that triggers the period. See Fed. R. Civ. P. 6(1)(1)(A).

[3] Because the end of the one-year period fell on a holiday (Monday, May 26, 2003), Petitioner's deadline for filing was Tuesday, May 27, 2003. See Fed. R. Civ. P. 6(a)(1) (directing that, when the period is stated in days or a longer unit of time, the Court includes the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday).

did not, seek discretionary review in Tennessee Supreme Court) on December 12, 2005.[4] See 28 U.S.C. § 2244(d)(2); Tenn. R. App. P. 11(b). Therefore, the limitations period resumed the next day, December 13, 2005.[5] See Fed. R. Civ. P. 6(a)(1)(A). Since 259 days of the one-year limitations period had run, Petitioner had 106 days, or until March 29, 2005,[6] to timely file his federal habeas petition.

Petitioner filed his federal habeas petition on November 14, 2023, some 18 years after the AEDPA's one-year limitations period had expired. The petition is untimely by nearly two decades.

Petitioner's subsequent collateral attacks in state courts following the expiration of the federal habeas corpus statute of limitations provided no statutory tolling. That is because, under 28 U.S.C. § 2244(d)(2), the statute of limitations cannot be renewed after it has fully run. See Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not . . . 'revive' the limitations period [i.e., restart the clock at zero]; it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.").

Still, the "one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances." Ata v. Scutt, 622 F.3d 736, 741 (6th Cir. 2011) (citing Holland v. Florida, 560 U.S. 631, 645 (2010)). A petitioner seeking equitable tolling bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[4] The 60 days expired on Saturday, December 10, 2005; therefore, the limitations period legally expired on the following Monday, December 12, 2005. See Fed. R. Civ. P. 6(a)(1),

[5] The one-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment is not tolled during the pendency of petition for certiorari to the United States Supreme Court seeking review of denial of state postconviction relief. See Lawrence v. Florida, 549 U.S. 327, 337 (2007). In any event, it does not appear that Petitioner sought review by the United States Supreme Court.

[6] Here, Respondent's calculations differ from the Court's (see Doc. No. 13 at PageID 1965); nevertheless, the Court and Respondent arrive at the same conclusion: the instant federal habeas petition was untimely filed.

circumstance stood in his way" and prevented timely filing. Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Equitable tolling is applied "sparingly." Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749 (6th Cir. 2011) (quoting Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)). Petitioner contends that he is entitled to equitable tolling because he has a physical and mental disability and because his state counsel abandoned him. Petitioner's arguments are unavailing.

First, Petitioner argues that the "extraordinary circumstance" of his "mental and physical incompetency" warrants equitable tolling. (Doc. No. 18 at PageID 1984). In his Reply to Respondent's Motion to Dismiss, Petitioner requests an evidentiary hearing on this argument, stating that, "[a]s the evidence shows, Bennett cannot focus on one object more than minute, by birth defect." (Doc. No. 18 at PageID 1984). In Ata, the Sixth Circuit held that, when a district court is applying the standard set forth in Schriro v. Landrigan, 550 U.S. 465 (2007) to determine whether a prisoner is entitled to an evidentiary hearing on his request for equitable tolling, "the court [is] to determine if the factual allegations are sufficient to support equitable tolling and to review the state court record in order to establish whether petitioner's assertions are refuted by the record or otherwise without merit." 662 F.3d at 742. Ata makes clear that "an evidentiary hearing need not be provided as a matter of right." Id. Rather, "an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file." Id. "[A] causal link between the mental condition and untimely filing is required." Id.

The "evidence" Petitioner points to is the photograph of him that law enforcement used to create the photographic lineup during the investigation period. (Doc. No. 10-8 at PageID 980). Petitioner also states that he "needs somebody (some medical specialist) before deciding anything

7

due to his mental and physical incompetence, which prevented him from, among many, timely filing his Habeas Corpus Petition." (Doc. No. 18 at PageID 1984). Notwithstanding that Petitioner makes inconsistent arguments,[7] the state-court record lacks any documentation of Petitioner's alleged mental and physical disabilities. Instead, the state-court record shows that Petitioner testified on his own behalf at the post-conviction evidentiary hearing during which time he never mentioned that he had a mental or physical disability. (See Doc. No. 11-2 at PageID 1408-22). And while Petitioner now asserts that he must consult with "some medical specialist before deciding anything," Petitioner at no point required assistance to answer questions from his post-conviction counsel, the prosecutor, or the post-conviction court. (See Doc. No. 18 at PageID 1984). Petitioner filed multiple pro se collateral review actions in state court, filed the instant 28-page federal habeas petition, and filed a response to Respondent's Motion to Dismiss after seeking an extension of time to do so. It does not appear that Petitioner's alleged disabilities have hindered his ability to litigate.

Moreover, Petitioner simply has not demonstrated a causal link between his asserted disabilities and the untimely filing of his federal habeas petition. "Illness—mental or physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitation period." Price v. Lewis, 119 F. App'x 725, 726 (6th Cir. 2005); see also Smith v. Beightler, 49 F. App'x 579, 580-81 (6th Cir. 2002) (finding that the petitioner was not entitled to equitable tolling simply because he was blind and had to rely on others to assist him in accessing the courts). Petitioner has not identified what "mental deficiencies" he alleges. While mental incompetence or incapacity may provide a basis for equitable tolling, "a blanket assertion of mental

---

[7] Petitioner argues that he did not timely file his federal habeas petition because, for a substantial period of time, he was unaware that he could seek relief in federal court. But Petitioner also argues that he did not seek relief because of his physical and mental disabilities.

8

incompetence is insufficient to toll the statute of limitations." Ata, 662 F.3d at 741-42; McSwain v. Davis, 287 F. App'x 450, 456 (6th Cir. 2008).

The record here does not demonstrate that Petitioner's alleged disability or disabilities actually prevented him from pursuing his legal rights during the limitations period. See e.g., Bilbrey v. Douglas, 124 F. App'x 971, 973 (6th Cir. 2005) (declining to apply equitable tolling on the basis of mental incapacity where petitioner had pursued state court litigation even during the periods when her mental condition was the most impaired). An evidentiary hearing is not required because Petitioner's factual allegations are not sufficient to support equitable tolling and the state court record refutes Petitioner's assertions.

Next, Petitioner argues that he was abandoned by appellate counsel and post-conviction counsel because they "did not provide any notification regarding the one year statute of limitations within which the Petitioner should file the 2254 Federal Habeas Corpus." (See Doc. No. 1 at PageID 28). In particular, Petitioner states that he did not pursue his rights "from 2005 to 2013, approximately eight years, when he was misled by Post-Conviction counsel, Charles Walker." (Doc. No. 18 at PageID 1982).

A "garden variety claim of excusable neglect" does not generally give rise to equitable tolling. Holland, 560 U.S. at 651-52 (citing Irwin, 498 U.S. at 96). However, a "serious instance[] of attorney misconduct" may constitute extraordinary circumstances. Id. at 652. One such act of misconduct can be attorney abandonment. Maples v. Thomas, 565 U.S. 266, 283 (2012). In Maples, the Supreme Court considered it "abandonment" when a petitioner's post-conviction attorney ceased representing him in the midst of post-conviction proceedings without filing a notice of his withdrawal or informing the defendant or the court of his departure without finding another attorney to assume representation of the defendant. Id. at 270-76. Thus, a petitioner who

is "left without any functioning attorney of record," without a "reason to suspect that he lacked counsel," and without notice "that he had better fend for himself" can establish that his attorney has abandoned him. Id. at 288-89. A petitioner in this situation cannot be held responsible for acts or omissions of an attorney who has abandoned him and cannot be faulted for failing to act on his own behalf when he lacks reason to believe that the attorney is not representing him. Id. at 281, 283.

Petitioner fails to demonstrate attorney abandonment here. His argument in support of his allegation of attorney abandonment is focused on the fact that his previous attorneys "did not provide any notification regarding the applicable one year statute of limitations". But Petitioner provides no legal authority supporting his assertion that state trial attorneys have a duty to inform a criminal defendant of the ability to file this federal civil lawsuit. In fact, persuasive authority from the Sixth Circuit negates Petitioner's argument. See Martin v. Hurley, 150 Fed. App'x. 513 (6th Cir. 2005) (finding that attorney's failure to advise petitioner of AEDPA deadline is not extraordinary circumstance warranting equitable tolling).

Petitioner's lack of knowledge surrounding what federal rights were available to him does not excuse his lack of diligence. See Allen v. Yukins, 366 F.3d 396, 403 (6th Cir. 2004) (where petitioner argued that he lacked notice of AEDPA's limitations period, court found that the "AEDPA statute plainly states that the one-year statute of limitations runs from the 'conclusion of direct review' and that the statutory period is tolled during the time when a motion for state postconviction review is pending" and, even if petitioner lacked actual knowledge of the relevant provisions of the AEDPA, 'ignorance of the law alone is not sufficient to warrant equitable tolling.'"). See also Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) ("[A]n inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the

statute of limitations."); Griffin v. Rogers, 399 F.3d 626, 637 (6th Cir. 2005); Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 750-51 (6th Cir. 2011).

In summary, the Court finds that Petitioner cannot meet the high burden of showing that he is entitled to equitable tolling. Accordingly, the Court finds that the present petition is barred by the statute of limitations established by 28 U.S.C. §§ 2244(d)(1)(D) and may not be considered on the merits by this Court.

### IV. CONCLUSION

After conducting a preliminary review of Petitioner's Section 2254 petition under Rule 4, Rules – Section 2254 Cases, the Court finds that the instant petition was untimely filed, and Petitioner has not demonstrated that he is entitled to equitable tolling. Accordingly, Respondent's Motion to Dismiss (Doc. No. 12) is **GRANTED**, the petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE** as time-barred under 28 U.S.C. § 2244(d)(1).

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Because jurists of reason would not disagree with the resolution of Petitioner's petition and Respondent's Motion to Dismiss the petition as untimely and not subject to equitable tolling, the Court **DENIES** a COA.

This Order constitutes final judgment in this action.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

12

Case 3:23-cv-01227   Document 21   Filed 06/10/24   Page 12 of 12 PageID #: 2010